# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO R. JIMENEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>　　　　Defendant. | Case No. ED CV 09-2144 JCG<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.
## INTRODUCTION AND SUMMARY

On December 1, 2009, plaintiff Mario R. Jimenez ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant" or "Commissioner"), the Commissioner of the Social Security Administration, seeking review of a denial of an application for supplemental security income. [Docket No. 4.]

On February 19, 2010, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 13, 15.]

On April 14, 2010, this matter was transferred to the calendar of the undersigned Magistrate Judge. [Docket No. 20.] Both Plaintiff and Defendant subsequently consented to proceed for all purposes before the Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Docket Nos. 21, 22.]

Pursuant to a December 2, 2009 order regarding further proceedings, Plaintiff submitted a brief in support of his complaint ("Plaintiff's Brief") on March 17, 2010. [Docket No. 18.] On April 15, 2010, Defendant submitted his opposition brief ("Defendant's Brief"). [Docket No. 19.] The Court deems the matter suitable for adjudication without oral argument.

In sum, having carefully studied, *inter alia*, the parties' written submissions and the administrative record, the Court concludes that, as detailed below, the Administrative Law Judge ("ALJ") erred in evaluating the opinion of Plaintiff's examining physician. The ALJ improperly substituted his own medical interpretation in place of the examining orthopedic surgeon. Thus, the Court remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## **PERTINENT FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff has a masters degree in electronics and was 59 years old on the date of his administrative hearing. (*See* Administrative Record ("AR") at 22, 25, 69.) Plaintiff has no past relevant work. (*Id.* at 20.)

On December 19, 2006, over three years ago, Plaintiff filed for supplemental security income ("SSI"), alleging that he has been disabled since November 1, 1989 due to high blood pressure, cancer, diabetes, hypertension, arthritis, and depression, anxiety and panic attacks. (*See* AR at 39, 46, 69-72.) Plaintiff's application was denied initially and on reconsideration. (*Id.* at 39-43, 44, 46-50.)

On March 27, 2009, Plaintiff, represented by counsel, appeared and testified at a hearing before an ALJ. (AR at 22, 24-36.)

On June 9, 2009, the ALJ denied Plaintiff's request for benefits. (AR at 13-21.) Applying the five-step sequential evaluation process – which is discussed below – the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since his SSI application date. (*Id.* at 15.) At step two, the ALJ

found that Plaintiff suffers from severe impairments consisting of "an impairment involving the musculoskeletal system, insulin-dependent diabetes mellitus and obesity[]" and "mental impairment from a mood disorder[.]" (*Id.* (emphasis omitted).)

At step three, the ALJ determined that the evidence does not demonstrate that Plaintiff's impairment, either individually or in combination, meet or medically equal the severity of any listing set forth in the Social Security regulations.[1/] (AR at 15.)

The ALJ then assessed Plaintiff's residual functional capacity[2/] ("RFC") and determined that he can perform "medium work . . . except postural limitations (i.e., climbing ramps/stairs/ladders/ropes/scaffolds, balancing, stooping, kneeling, crouching and crawling) could be done on a frequent basis." (AR at 16 (emphasis omitted).) The ALJ also stated that "[m]entally, he can perform unskilled entry level (SVP 2), object-oriented work." (*Id.* (emphasis omitted).)

The ALJ found, at step four, that Plaintiff has no past relevant work. (AR at 20.)

At step five, based on Plaintiff's vocational factors, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (AR at 20 (emphasis omitted).) Thus, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 13, 21.)

Plaintiff filed a timely request for review of the ALJ's decision, which was

---

[1/] *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

[2/] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

denied by the Appeals Council. (AR at 5-7, 9.) The ALJ's decision stands as the final decision of the Commissioner.

## III.
## APPLICABLE LEGAL STANDARDS

### A. Five-Step Inquiry to Ascertain a Cognizable Disability

A claimant must satisfy three fundamental elements to be eligible for disability benefits: (1) a medically-determinable impairment; (2) the impairment prevents the claimant from engaging in substantial gainful activity; and (3) the impairment is expected to result in death or to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). A well-established five-step sequential inquiry is utilized to assess whether a particular claimant satisfies these three elements. The inquiry proceeds as follows:

First, is the claimant engaging in substantial gainful activity? If so, the claimant cannot be considered disabled.

Second, does the claimant suffer from a "severe" impairment, *to wit*, one continuously lasting at least 12 months? If not, the claimant is not disabled.

Third, does the claimant's impairment or combination of impairments meet or equal an impairment specifically identified as a disability by the Commissioner under 20 C.F.R. part 404, subpart P, appendix 1? If so, the claimant is automatically determined to be disabled.

Fourth, is the claimant capable of performing his past work? If so, the claimant is not disabled.

Fifth, does the claimant have the so-called "residual functional capacity" to perform some other type of work? The critical question posed here is whether the claimant can, in light of the impairment and his or her age, education and work experience, adjust to another form of gainful employment?

If a claimant is found "disabled" or "not disabled" along any of these steps,

there is no need to complete the remaining inquiry. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Tackett*, 180 F.3d at 1098-99.

B. <u>Standard of Review on Appeal</u>

This Court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as amended* Dec. 21, 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

///
///
///

## IV.

## **ISSUES PRESENTED**

Two disputed issues are presented for decision here:

1.      whether the ALJ improperly evaluated the medical evidence with respect to Plaintiff's physical and mental limitations, (*see* Pl.'s Br. at 2-7); and

2.      whether the ALJ erred in his RFC finding. (*Id.* at 7-9.)

Under the circumstances here, the Court finds the issue of the ALJ's evaluation of the medical evidence with respect to Plaintiff's physical limitations to be dispositive of this matter, and does not reach the remaining issue.

## V.

## **DISCUSSION AND ANALYSIS**

Plaintiff contends that the ALJ improperly disregarded Plaintiff's "chronic back pain." (Pl.'s Br. at 3.) Plaintiff argues that the ALJ ignored a "report that Plaintiff's range of motion for the cervical and thoracolumbar spine are below normal." (*Id.* at 4.)[3]

---

[3]  With respect to Plaintiff's physical limitations, Plaintiff also asserts that the ALJ failed to take into account an "instruction by his doctor to avoid bending, heavy lifting, prolonged sitting and activities which make the problem worse." (Pl.'s Br. at 3.) Plaintiff's counsel explains that counsel's notes summarizing the instruction were mistakenly included as the first page of the instruction and the ALJ erred in disregarding the instructions because counsel's notes were "not signed by anyone." (*Id.* at 4.)

Defendant maintains that the ALJ's confusion regarding the instructions were "at most, harmless error because the ALJ also explained that other objective medical evidence contradicted these prophylactic instructions," which were "pre-printed standardized instructions." (Def.'s Br. at 3.)

In light of the Court's decision, the Court need not reach this issue. However, the Court notes that the instructions, (*see* AR at 315-16), appear to be a generic printout directed at all patients suffering from general back pain. The instructions were attached to treatment notes from an emergency room visit made by Plaintiff. (*See id.* at 314-17.) Contrary to Plaintiff's assertion, the instructions do not appear

1  Defendant counters that "in spite of this finding, [the examining doctor]
2  concluded that Plaintiff was capable of frequent use of his upper extremities" and
3  "the ALJ noted, 'there has been decreased range of motion and generalized
4  arthralgias and myalgias but no neurological deficits.'" (Def.'s Br. at 4.)  Defendant
5  also maintains that "the ALJ is responsible for determining credibility and resolving
6  conflicts in medical testimony." (*Id.* (internal quotation marks and citation
7  omitted).)

8  A.  ALJ Must Provide Specific and Legitimate Reasons Supported by
9  Substantial Evidence to Reject an Examining Physician's Opinion

10  In evaluating medical opinions, Ninth Circuit case law and Social Security
11  regulations "distinguish among the opinions of three types of physicians: (1) those
12  who treat the claimant (treating physicians); (2) those who examine but do not treat
13  the claimant (examining physicians); and (3) those who neither examine nor treat the
14  claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.
15  1995, *as amended* April 9, 1996); *see also* 20 C.F.R. §§ 404.1527(d) & 416.927(d)
16  (prescribing the respective weight to be given the opinion of treating sources and
17  examining sources).  "As a general rule, more weight should be given to the opinion
18  of a treating source than to the opinion of doctors who do not treat the claimant."
19  *Lester*, 81 F.3d at 830; *accord Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030,
20  1036 (9th Cir. 2003).  This is so because a treating physician "is employed to cure
21  and has a greater opportunity to know and observe the patient as an individual."
22  *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

23  "The opinion of an examining physician is, in turn, entitled to greater weight
24  than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830; *see also* 20
25  C.F.R. §§ 404.1527(d)(1)-(2) & 416.927(d)(1)-(2).  If the opinion of an examining
26  physician is rejected in favor of the opinion of a nonexamining physician, the ALJ

27  _____

28  to represent the treating physician's opinion of Plaintiff's specific limitations.

1  may do so only by providing specific and legitimate reasons.  *Lester*, 81 F.3d at 830-
2  31.  The ALJ can meet the requisite specific and legitimate standard "by setting out a
3  detailed and thorough summary of the facts and conflicting clinical evidence, stating
4  his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d
5  747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted).

6       B.     Examining Physician's Opinion

7       Here, on February 17, 2007, examining orthopedic surgeon Warren David Yu,
8  M.D. ("Dr. Yu") completed an orthopedic evaluation of Plaintiff.  (AR at 102-05.)
9  Dr. Yu reported that Plaintiff "had a fall in 1989 from a second-story rooftop" and
10 suffers from "generalized arthritis that affects all of his joints."  (*Id.* at 102.)

11      Upon examination, Dr. Yu found that the "range of motion" in Plaintiff's
12 "cervical spine" with respect to flexion, extension, right rotation, left rotation, right
13 bending and left bending were all below "normal."  (AR at 103.)  Dr. Yu also
14 indicated that the "range of motion" in Plaintiff's "thoracolumbar"[4] with respect to
15 flexion, extension, right bending, and left bending were also below "normal."  (*Id.*)
16 Dr. Yu stated that "[e]xamination reveals generalized arthralgias and myalgias
17 throughout with mild guarding."[5]  (*Id.*)  Dr. Yu found that Plaintiff's range of
18 motion of the upper and lower extremities were "within normal limits," but
19 determined that "[e]xamination reveals generalized arthralgias and myalgias
20 throughout."  (*Id.* at 104.)

21      In making a functional assessment of Plaintiff, Dr. Yu concluded that "the
22 patient should be able to walk without an assistive device[,] . . . should be able to sit,
23 stand or walk for up to six hours in an eight-hour day[,] . . . should occasionally be

---

[4]  Thoracolumbar is defined as "[r]elating to the thoracic and lumbar portions of the vertebral column."  *Stedman's Medical Dictionary* 1982 (28th ed. 2006).

[5]  Arthralgia is "[p]ain in a joint."  *Stedman's Medical Dictionary* at 159.  Myalgia is "[m]uscular pain."  *Id.* at 1265.

allowed to pick up 20 pounds and frequently 10 pounds[, and] . . . should have frequent use of the upper extremities for pushing, pulling, fine finger motor movements, handling and fingering." (AR at 105.)  In other words, Dr. Yu limited Plaintiff to "light work."  *See* 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.").

### C. The ALJ's Analysis of Dr. Yu's Opinion

The ALJ rejected Dr. Yu's orthopedic evaluation, finding that it was "completely inconsistent with the examiner's actual physical examination findings":

> [Plaintiff] underwent an orthopedic consultative evaluation on February 17, 2007.  The reduction to light work assessed by the consultative examiner . . . is rejected as completely inconsistent with the examiner's actual physical examination findings.  For example, gait was normal, range of motion in the lower extremities was normal, straight leg raising was negative, motor strength was 5-/5 throughout (even with poor effort) and there were no reflex or sensory deficits.  There was also no effusion in the lower extremities.

(AR at 17 (citation omitted).)

### D. The ALJ Improperly Evaluated Dr. Yu's Opinion

Having carefully reviewed the record and the parties' written submissions, the Court is persuaded that the sole reason provided by the ALJ for rejecting Dr. Yu's opinion is not supported by substantial evidence.  Three reasons govern this determination.

First, the ALJ's characterization of Dr. Yu's opinion as "*completely* inconsistent with the examiner's actual physical examination findings" is not supported by the record.  (AR at 17 (emphasis added).)  Dr. Yu found that Plaintiff "should occasionally be allowed to pick up 20 pounds and frequently 10 pounds."

(*Id.* at 105.) The Court does not find this limitation is "completely inconsistent" with Dr. Yu's evaluation given his determination that Plaintiff's cervical spine and thoracolumbar range of motion were below "normal." (*See id.* at 103.)

Second, the ALJ's summary of Dr. Yu's evaluation, specifically that Plaintiff's "gait was normal, range of motion in the lower extremities was normal, straight leg raising was negative, motor strength was 5-/5 throughout (even with poor effort) and there were no reflex or sensory deficits[, and] . . . no effusion in the lower extremities," fails to acknowledge Dr. Yu's findings regarding Plaintiff's cervical spine and back. Thus, the ALJ's paraphrasing of Dr. Yu's report is not entirely accurate. *See Reddick*, 157 F.3d at 722-23 ("[T]he ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports. His paraphrasing of record material is not entirely accurate regarding the content or tone of the record."); *see also Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

Defendant asserts that "Plaintiff was capable of frequent use of his upper extremities" and "there has been decreased range of motion with generalized arthralgias and myalgias but no neurological deficits." (Def.'s Br. at 4 (internal quotation marks omitted).) However, the ALJ did not rely on this reason in rejecting Dr. Yu's opinion. The Court's review is limited to the reasons *actually* provided by the ALJ in his decision. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts[ and i]t was error for the district court to affirm the ALJ's . . . decision

based on evidence that the ALJ did not discuss.") (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

In any event, the fact that Dr. Yu found Plaintiff "capable of frequent use of his upper extremities" does not preclude Dr. Yu from restricting Plaintiff's ability to carry heavy items based on Plaintiff's back and cervical spine impairments.

Third, Dr. Yu's findings regarding Plaintiff's cervical spine are, in fact, supported by the record. For example, treatment notes indicate that Plaintiff suffers from chronic back pain. (*See, e.g.,* AR at 225 (emergency room treatment note dated August 7, 2005 indicating Plaintiff suffers from chronic back pain), 267 (diagnostic imaging results from examination conducted for "chronic low back pain" concluding that "[t]here is slight loss of usual lordosis"[6/] and "may be mild facet sclerosis"[7/]), 313 (emergency room treatment note dated May 24, 2007 indicating Plaintiff suffers from chronic back pain).)

In short, it appears that the ALJ has, in effect, improperly substituted his own interpretation of the evidence without setting forth sufficient authority or medical evidence to support his interpretation. *See Tackett*, 180 F.3d at 1102-03 (ALJ may not substitute his own interpretation of the medical evidence for the opinion of medical professionals); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000, *as amended* Dec. 13, 2000) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record."); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and

---

[6/] Lordosis is an "anteriorly convex curvature of the vertebral column; the normal lordoses of the cervical and lumbar regions are secondary curvatures of the vertebral column, acquired postnatally." *Stedman's Medical Dictionary* at 1119.

[7/] "In neuropathy, [sclerosis is] induration of nervous and other structures by a hyperplasia of the interstitial fibrous or glial connective tissue." *Stedman's Medical Dictionary* at 1733.

1 he must not succumb to the temptation to play doctor and make his own independent
2 medical findings.") (internal quotation marks, alterations and citations omitted).

## VI.
## REMAND IS APPROPRIATE

This Court has discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989, *as amended* Oct. 19, 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000, *as amended* May 4, 2000), *cert. denied*, 531 U.S. 1038 (2000). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, remand is required because the ALJ erred in failing to properly evaluate Dr. Yu's opinion.[8] On remand, the ALJ shall reevaluate Dr. Yu's opinion and either credit it as true, or provide specific and legitimate reasons for any portion of his opinion that is rejected. The ALJ shall also reassess the medical opinions in the record and provide sufficient reasons under the applicable legal standards for rejecting any portion of the medical opinions. The ALJ shall reassess Plaintiff's RFC and proceed through steps four and five to determine what work, if any, Plaintiff is capable of performing.

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered

---

[8] In light of the Court's remand instructions, it is unnecessary for the Court to address Plaintiff's remaining contentions. (*See* Pl.'s Br. at 5-9.)

**REVERSING** the decision of the Commissioner denying benefits and
**REMANDING** the matter for further administrative action consistent with this decision.

Dated: October 12, 2010

_____
Hon. Jay C. Gandhi
United States Magistrate Judge